## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHILLIP M. BOWMAN, | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :     **Civ. No. 10-00493-LPS** |
| | : |
| **UNITED STATES DEPARTMENT OF** | : |
| **AGRICULTURE,** | : |
| | : |
| **Defendant.** | : |

---

## MEMORANDUM ORDER

Pending before the Court is Defendant's Motion for Summary Judgment. (D.I. 40)

("Motion") For the reasons set forth below, the Court will grant the Motion.

## I.     BACKGROUND

### A.     Factual Background

Plaintiff Phillip M. Bowman, Jr. ("Plaintiff" or "Bowman") was employed by Defendant

United States Department of Agriculture ("Defendant" or "USDA") for twenty-six years. (*See*

D.I. 45 at 4) Plaintiff worked as an appraiser, conducting real estate appraisals of farm properties

in Delaware and Maryland for the Farm Service Agency ("FSA"), a component of USDA. (*See*

*id.*) In March 2005, Cheryl Walker ("Walker") became the Farm Loan Chief of Maryland and

Delaware (i.e., Plaintiff's first-line supervisor); Richard Bergold ("Bergold") became the FSA's

State Executive Director for Delaware (i.e., Walker's first-line supervisor and Plaintiff's second-

line supervisor). (*See id.*) In 2006, Plaintiff filed an Equal Employment Opportunity

Commission ("EEOC") complaint against Walker and Bergold, alleging harassment. (*See* D.I.

1

45 at 5) On June 3, 2008, Plaintiff filed another EEOC complaint against Walker and Bergold, alleging "retaliation for his first EEO[C] complaint of 2006, age discrimination, and continued harassment." *(See* D.I. 2 at 1; D.I. 45 at 7)

On June 6, 2008, Walker placed Plaintiff on a ninety-day Opportunity to Improve ("OTI") Program, whereby Plaintiff's job performance and work product were evaluated within the FSA. *(See* D.I. 41 at 7; D.I. 45 at 7) On September 12, 2008, Walker advised Plaintiff that she was proposing to remove him from his employment position as a result of Plaintiff's OTI Program performance. *(See* D.I. 45 at 7; D.I. 41 at 7-9) On October 27, 2008, Bergold informed Plaintiff that he was sustaining Walker's proposal to remove Plaintiff due to unacceptable performance; consequently, Plaintiff voluntarily retired from employment at USDA on November 8, 2008. *(See* D.I. 45 at 4; D.I. 41 at 10)

## B. Procedural Background

On November 28, 2008, Plaintiff appealed FSA's actions to the Merit System Protection Board ("MSPB"). *(See* D.I. 41 at 10) Beginning on June 1, 2009, a two-day evidentiary hearing was conducted before the MSPB. *(See id.)* On June 30, 2009, an administrative law judge affirmed FSA's actions. *(See* D.I. 41 at 10; D.I. 45 at 8) On or about August 8, 2009, Plaintiff petitioned the MSPB for review of its decision; after the petition was denied, Plaintiff appealed to the EEOC. *(See* D.I. 41 at 10-11; D.I. 45 at 8) After the EEOC affirmed the MSPB decision, Plaintiff filed his complaint (D.I. 2), pro se, on June 8, 2010.[1] *(See* D.I. 41 at 11; D.I. 45 at 8)

---

[1]Defendant construes Plaintiff's complaint as (1) alleging age discrimination and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and (2) challenging the procedure of administrative review within the agency. *(See* D.I. 41 at 11-21; D.I. 46 at 4-6)

Counsel appeared on behalf of Plaintiff on September 30, 2010. (D.I. 7)

On February 25, 2011, Defendant filed its answer to the complaint. (D.I. 12) On May 14, 2012, Defendant filed the pending Motion. (D.I. 40)

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be-or, alternatively, is-genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more that

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating

party opposing summary judgment "must present more than just bare assertions, conclusory

allegations or suspicions to show the existence of a genuine issue") (internal quotation marks

omitted). However, the "mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute

is genuine only where "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a

scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a

motion for summary judgment; there must be "evidence on which the jury could reasonably find"

for the non-moving party. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Age Discrimination

In evaluating Defendant's motion for summary judgment on Plaintiff's age discrimination

claim, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be

drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to

4

create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987). When a plaintiff provides no direct evidence of discrimination by reason of his age, the Court turns to the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this framework, a plaintiff must first establish *prima facie* evidence of discrimination by showing that: (1) he is forty years of age or older; (2) the defendant took an adverse employment action against plaintiff; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). If the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant, who must "articulate some legitimate, nondiscriminatory reason" for its treatment of the plaintiff. *McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Fuentes*, 32 F.3d at 763; *Smith*, 589 F.3d at 689-90. If the defendant articulates such a reason, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the employer's rationale is pretextual. *See McDonnell Douglas Corp.*, 411 U.S. at 804; *see also Fuentes*, 32 F.3d at 763; *Smith*, 589 F.3d at 690.

It bears emphasis that "throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes*, 32 F.3d at 763. Therefore, once the defendant has articulated a nondiscriminatory reason for its actions, the plaintiff must point to some evidence, direct or circumstantial, that the defendant's proffered

reasons are merely a pretext for discrimination. *See id.* at 763-64. That is, the plaintiff must point to some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000). Thus, to make a sufficient showing of pretext, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's reason that "a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765 (internal quotation marks and citations omitted).

Here, Plaintiff provides no direct evidence of age discrimination, so the Court must apply the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas*, 411 U.S. at 802-04. Even drawing all reasonable inferences in Plaintiff's favor, the record does not contain evidence from which a reasonable factfinder could find that Plaintiff has met his burden to make a *prima facie* showing of age discrimination. While Plaintiff can demonstrate that he is forty years of age or older, that Defendant took an adverse employment action against Plaintiff, and that Plaintiff was qualified for the position in question, the record contains no evidence that Plaintiff was replaced by another employee who was sufficiently younger than Plaintiff. Even if Plaintiff met his *prima facie* burden, Defendant contends that "Plaintiff was not replaced by anyone, much less someone younger; [and] appraisal duties since Plaintiff's retirement are being conducted by contract appraisers." (D.I. 41 at 16) Plaintiff has no response to this contention.

Thus, the Court will grant summary judgment to Defendant on Plaintiff's age

discrimination claim.[2]

## B.    Retaliation

"In the absence of direct evidence of retaliation, retaliation claims under the ADEA . . .

typically proceed under the *McDonnell Douglas* framework." *Fasold v. Justice*, 409 F.3d 178,

188 (3d Cir. 2005) A *prima facie* case of retaliation under the ADEA requires the plaintiff to

show: (1) he engaged in a protected activity; (2) he was subject to an adverse action by the

employer either subsequent to or contemporaneous with the protected activity; and (3) there is a

causal connection between the protected activity and the adverse action. *See id.*

Plaintiff appears to have made out a *prima facie* case of retaliation under the ADEA, as

Plaintiff's EEOC complaints constitute protected activity, he was subjected to adverse

employment actions, and there may be a causal connection between his complaints and the

adverse employment actions. Plaintiff filed an EEOC complaint in 2006 against Walker and

Bergold. *(See* D.I. 45 at 5; D.I. 2 at 1) Approximately two years later, on June 3, 2008, Plaintiff

filed another EEOC complaint against Walker and Bergold. *(See* D.I. 45 at 7; D.I. 2 at 1) Three

days after this latter complaint, on June 6, 2008, Walker placed Plaintiff on the OTI Program,

which subsequently led to Plaintiff's voluntary retirement. *(See* D.I. 41 at 7; D.I. 42 at 3-5)

During Plaintiff's participation in the OTI Program, several of his appraisals were

reviewed by the FSA's Chief Appraiser, Clarence Snyder ("Snyder"). *(See* D.I. 41 at 7) After

evaluating Plaintiff's work product, Snyder wrote to Walker the following statements, dated

---

[2]To the extent Plaintiff is also alleging a hostile work environment type of discrimination,
this claim also fails to survive Defendant's summary judgment motion, for at least the reason that
none of what he alleges to have been harassment appears to have had anything to do with his age.

7

September 3, 2008:

> The national office has recently provided six reviews regarding Mr.
> Bowman's appraisal products, five of which failed to meet
> standards generally acceptable for the appraisal profession. The
> reviews were conducted independently by myself and two different
> FSA Staff Appraisers. All three reviewers tended to conclude
> similar results.
>
> Technically speaking from an appraisal professional standpoint, I
> do not know if further reviews will result in anything other than the
> existing trend. The lack of work product credibility and
> compliance continues to be an issue as well as a burden on FSA's
> budget and Mr. Bowman must immediately improve his
> performance to an acceptable level. Failure to do so exposes the
> agency to unnecessary collateral risk.

(D.I. 41 at 7-8; *see also* D.I. 42 at 50)

On September 12, 2008, Walker wrote a letter to Plaintiff stating that Walker was

proposing to Bergold that Plaintiff should be removed from his position, citing at least five

specifically detailed deficiencies with Plaintiff's work product. (*See* D.I. 42 at 6-10) On October

7, 2008, Bergold wrote a letter to Plaintiff explaining that he was sustaining Walker's proposal to

remove Plaintiff due to unacceptable work performance. (*See id.* at 11-14) Consequently,

Plaintiff retired on November 8, 2008. (*See* D.I. 2 at 1; D.I. 41 at 10)

Even taking the record in the light most favorable to Plaintiff, and drawing all reasonable

inferences in his favor, a reasonable factfinder could not find that Plaintiff has shown that

Defendant's rationale for its adverse employment actions was a pretext for retaliation. Therefore,

summary judgment will be granted to Defendant on Plaintiff's retaliation claim.

## C.    Review of MSPB Procedure

Although the Third Circuit has yet to rule on the issue of standard of review pertaining to

8

mixed cases of alleged employment discrimination and MSPB procedural violations, most courts

employ a *de novo* standard of review to claims of discrimination and apply the arbitrary and

capricious standard of review to all other claims brought before the MSPB. *See, e.g., New-*

*Howard v. Shinseki,* 2012 WL 2362546, \*11-12 (E.D. Pa. June 21, 2012); *Kelliher v. Veneman,*

313 F.3d 1270, 1275 (11th Cir. 2002); *Carr v. Reno,* 23 F.3d 525, 528 (D.C. Cir. 1994); *Mason*

*v. Frank,* 32 F.3d 315, 317-18 (8th Cir. 1994); *Williams v. Rice,* 983 F.2d 177, 179-80 (10th Cir.

1993); *Morales v. MSPB,* 932 F.2d 800, 802 (9th Cir. 1991). The Court will follow the same

approach, applying *de novo* review to Plaintiff's discrimination claims and a deferential standard

to review Plaintiff's nondiscrimination claims.

The Court has already undertaken a *de novo* review of Plaintiff's discrimination claims

and found that Plaintiff has failed to meet his burden to prevent summary judgment. As for

Plaintiff's other claims, Plaintiff has failed to cite any ruling or decision by the MSPB that is

either arbitrary or capricious. (*See* D.I. 2 at 1-3; D.I. 45 at 14-15) Consequently, the Court will

grant summary judgment to Defendant with respect to Plaintiff's nondiscrimination claims.

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED THAT Defendant's Motion for Summary

Judgment (D.I. 40) is **GRANTED**.

March 28, 2013

UNITED STATES DISTRICT JUDGE